Rosanne L. Mah (State Bar No. 242628)
Email: rmah@zlk.com
**LEVI & KORSINSKY, LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

[*Additional Counsel listed on signature block.*]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL PATINO, an individual,

                Plaintiff,

    vs.

SUNRUN INC., EDWARD FENSTER,
KATHERINE AUGUST-DEWILDE, LESLIE A.
DACH, ALAN D. FERBER, LYNN JURICH,
MARY POWELL, and GERALD RISK,

              Defendants.

Case No. _____

**COMPLAINT FOR VIOLATION OF THE
SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff, Daniel Patino ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Sunrun Inc. ("Sunrun" or the "Company") and the members of Sunrun's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") arising out of a materially incomplete and misleading Registration Statement filed on Schedule S-4 (the "Registration Statement") with the U.S. Securities and Exchange Commission (the "SEC") on August 14, 2020.

2.      On July 6, 2020, Sunrun announced that it had entered into a definitive agreement (the "Merger Agreement") pursuant to which Vivint Solar, Inc. ("Vivint Solar") shareholders will receive $0.55 shares of Sunrun common stock for each share of Vivint Solar common stock owned (the "Proposed Transaction").

3.      The Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction.

4.      For these reasons and as set forth in detail herein, Defendants have violated Sections 14(a) and 20(a) of the Exchange Act.  Judicial intervention is warranted here to prevent irreparable harm to the Company's stockholders.  The stockholder vote on the proposed transaction (the "Stockholder Vote") is forthcoming. Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed to the Company's stockholders prior to Stockholder Vote so that they can properly determine how to vote.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under §§ 14(a) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has personal jurisdiction over all of the defendants because each is either

a corporation that is headquartered in this district, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because a substantial portion of the transactions and wrongs complained of herein, occurred in this District, and Sunrun is headquartered in this District.

**PARTIES**

8.      Plaintiff is, at all relevant times, the owner of shares of Sunrun common stock.

9.      Defendant Sunrun is one of the nation's leading home solar, battery storage, and energy services companies. Sunrun's mission is to provide our customers with clean, affordable solar energy and storage, and a best-in-class customer experience. Founded in 2007, Sunrun pioneered the residential solar service model, creating a low-cost solution for customers seeking to lower their energy bills. By removing the high initial cost and complexity of cash system sales that used to define the residential solar industry, Sunrun fostered the residential solar industry's rapid growth and generated enormous consumer value. Sunrun's innovative home battery solution, Brightbox, brings families affordable, resilient, and reliable energy. The company can also manage and share stored solar energy from the batteries to provide benefits to households, utilities, and the electric grid while reducing our reliance on polluting energy sources. Sunrun's relentless drive to increase the accessibility and affordability of solar energy is fueled by Sunrun's enduring vision: to create a planet run by the sun. Sunrun's principal executive offices are located at 225 Bush Street, Suite 1400, San Francisco, California 94104.  Sunrun's common stock is publicly traded on Nasdaq under the ticker symbol "RUN".

10.      Individual Defendant Edward Fenster ("Fenster") is one of Sunrun's co-founders and has served as the Company's Chairman since March 2014 and as a member of the board of directors since inception.

11.      Individual Defendant Lynn Jurich ("Jurich") is one of Sunrun's co-founders and has served as Sunrun's Chief Executive Officer since March 2014 and as a member of the board of

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

directors since inception.

12.     Individual Defendant Katherine August-deWilde ("August-deWilde") has served as a member of Sunrun's board since 2016.

13.     Individual Defendant Leslie Dach ("Dach") has served as a member of Sunrun's board of directors since May 2016.

14.     Individual Defendant Alan Ferber ("Ferber") has served as a member of Sunrun's board of directors since February 2018.

15.     Individual Defendant Mary Powell ("Powell") has served as a member of Sunrun's board of directors since 2018.

16.     Individual Defendant Gerald Risk ("Risk") has served as a member of Sunrun's board of directors since February 2014.

17.     Defendants Fenster, Jurich, August-deWilde, Dach, Ferber, Risk, and Powell are collectively referred to herein as the "Board" or the "Individual Defendants."

18.     The Individual Defendants and Portola are referred to herein as "Defendants."

## OTHER RELEVANT ENTITIES

19.     Non-party Vivint Solar is a leading full-service residential solar provider in the United States. Founded in 2011, Vivint Solar provides homeowners with simple and affordable clean energy. With the help of Vivint Solar, homeowners can power their homes with clean, renewable energy, typically achieving significant financial savings over time. Vivint Solar designs and installs solar energy systems for homeowners and offers monitoring and maintenance services. In addition to being able to purchase a solar energy system outright, homeowners may benefit from Vivint Solar's affordable, flexible financing options, including power purchase agreements, or lease agreements, where available. Vivint Solar also offers solar plus storage systems with LG Chem home batteries and electric vehicle chargers with ChargePoint Home. Vivint Solar's principal executive offices are located at 1800 West Ashton Boulevard, Lehi, Utah. Vivint Solar's common stock is publicly traded on NYSE under the ticker symbol "VSLR".

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**FURTHER SUBSTANTIVE ALLEGATIONS**

**The Proposed Transaction**

20.     Sunrun's management and board of directors, together with their legal and financial advisors, periodically review and assess various strategies, opportunities and alternatives that may enhance stockholder value. As part of this regular review and assessment of strategic opportunities, on occasion between December 2016 and mid-2018, Vivint Solar's management and board and members of Sunrun's management and board had discussions about potential strategic opportunities. Vivint Solar and Sunrun representatives recognized the potential strategic benefits of a combination between Vivint Solar and Sunrun, but the discussions were high-level with no specific terms discussed.

21.     These preliminary discussions progressed into serious discussion when, on November 6, 2019, consistent with the directive of the Sunrun Board to review and assess various strategic opportunities, Edward Fenster, executive chairman of the Sunrun Board, called Vivint CEO David Bywater and, after discussing industry matters, expressed interest in exploring a potential strategic transaction with Vivint Solar.

22.     On February 19, 2020, Sunrun submitted an indication of interest proposing a strategic combination with Vivint Solar in which shares of Vivint Solar common stock would be exchanged for shares of Sunrun common stock at an unspecified exchange ratio that would be between 0 to 5% greater than an at-market exchange ratio.

23.     Over the next two months, Sunrun and its representatives conducted due diligence and were granted access to Vivint's data room following the execution of a confidentiality agreement.

24.     On April 1, 2020, the Sunrun Board held a telephonic board meeting, at which time Mr. Fenster provided the Sunrun Board with background regarding a potential transaction with Vivint Solar, including an update on their conversations with representatives of Vivint Solar and Morgan Stanley. Mr. Fenster described for the Sunrun Board their views with respect to the strategic rationale and challenges of a potential strategic transaction with Vivint Solar. After discussion, the Sunrun Board expressed support for a strategic transaction with Vivint Solar and authorized Sunrun senior management to continue to negotiate with representatives of Vivint Solar.

25.     On April 28, 2020, Sunrun submitted a revised non-binding indication of interest

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

proposing a strategic combination with Vivint Solar in which each share of Vivint Solar common stock would be exchanged for 0.505 shares of Sunrun common stock, which represented an approximately 15% premium to the $5.93 per share closing market price of Vivint Solar common stock on April 27, 2020. The exchange ratio would also have a "collar" where the exchange ratio would be fixed unless the price of Sunrun common stock increased or decreased by more than 40%. Sunrun also sought exclusivity in order to proceed with its proposal.

26.     Two days later, on April 30, 2020, the Sunrun Board held a telephonic board meeting, which was attended by Sunrun senior management. During the meeting, Ms. Jurich provided the Sunrun Board with an update on discussions with Vivint Solar, and discussed with the Sunrun Board the terms of Sunrun's revised proposal to Vivint Solar, which included an exchange ratio of 0.505 shares of Sunrun common stock for each share of Vivint Solar common stock. Ms. Jurich also discussed finalizing the terms of Credit Suisse Securities (USA) LLC's ("Credit Suisse") engagement as Sunrun's financial advisor. Credit Suisse was selected based on its long-standing relationship with Sunrun. Credit Suisse had been advising Sunrun senior management on potential discussions with Vivint Solar since February 2020. The Sunrun Board approved the engagement of Credit Suisse as financial advisor in connection with the potential strategic transaction with Vivint Solar. The Sunrun Board then authorized Sunrun senior management to continue to proceed with negotiations with Vivint Solar.

27.     In April 2020, Sunrun management prepared certain financial forecasts in connection with the potential transaction process, which were shared with the Sunrun Board. Certain of these forecasts were shared with Vivint Solar and Credit Suisse in connection with the potential transaction process.

28.     Following continued negotiations between the parties throughout the Spring of 2020, Sunrun agreed to increase the consideration in its prior proposal to an increased exchange ratio of 0.525 (without a collar). Additionally, throughout the spring and summer of 2020, Sunrun management updated the previously prepared financial forecasts in connection with the potential transaction process, which were shared with the Sunrun Board. Certain of these forecasts were shared with Credit Suisse in connection with the potential transaction process.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

29.     On June 20, 2020, the Sunrun Board held a telephonic board meeting, to discuss the status of due diligence and negotiations regarding the terms of the merger agreement, including Vivint's continued request to increase the exchange ratio of 0.525 that had been most recently proposed by Sunrun. After discussion, the Sunrun Board expressed their support of the key transaction terms reviewed and authorized Sunrun senior management to continue with negotiations with Vivint Solar.

30.     Following continued discussions between the parties, on July 3, 2020, at the direction of the Sunrun Board, Mr. Fenster informed Mr. Wallace that Sunrun would agree to a revised exchange ratio of 0.55.

31.     With the revised exchange ratio agreed to, from July 3, 2020 through July 6, 2020, Sunrun and Vivint Solar finalized the merger agreement.

32.     On July 6, 2020, the Sunrun Board held a virtual board meeting to vote on the Proposed Transaction. During the meeting,  representatives of Credit Suisse reviewed Credit Suisse's financial analyses with respect to the transaction and rendered Credit Suisse's oral opinion that the exchange ratio was fair, from a financial point of view, to Sunrun. At the conclusion of the meeting, the Sunrun Board: (i) approved and declared advisable, fair to and in the best interests of Sunrun and its stockholders, the merger agreement, the merger and all other transactions, ancillary agreements, documents and other instruments identified in and contemplated by the merger agreement; and (ii) directed that the Sunrun share issuance proposal and the Sunrun adjournment proposal be submitted to the Sunrun stockholders for approval.

33.     In a press release dated July 6, 2020, each of Sunrun and Vivint announced that they had entered into the Merger Agreement.

34.     The press release states in pertinent part:

SAN FRANCISCO, July 06, 2020 (GLOBE NEWSWIRE) -- Sunrun (NASDAQ: RUN), a leading provider of residential solar, battery storage and energy services, and Vivint Solar (NYSE: VSLR), a leading full-service residential solar provider in the United States, today announced the companies have entered into a definitive agreement under which Sunrun will acquire Vivint Solar in an all-stock transaction, pursuant to which each share of Vivint Solar common stock will be exchanged for 0.55 shares of Sunrun common stock, representing a combined Enterprise Value of $9.2 billion based on the closing price of Sunrun's shares on July 6, 2020. Vivint Solar stockholders are

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

expected to own approximately 36% and Sunrun stockholders are expected to own approximately 64% of the fully diluted shares of the combined company. The exchange ratio implies a 10% premium for Vivint Solar shares based on closing prices on July 6, 2020, and a 15% premium to the exchange ratio implied by the three month volume weighted average price of Vivint Solar and Sunrun shares.

"Americans want clean and resilient energy. Vivint Solar adds an important and high-quality sales channel that enables our combined company to reach more households and raise awareness about the benefits of home solar and batteries," said Lynn Jurich, Sunrun's Chief Executive Officer and co-founder. "This transaction will increase our scale and grow our energy services network to help replace centralized, polluting power plants and accelerate the transition to a 100% clean energy future. We admire Vivint Solar and its employees, and look forward to working together as we integrate the two companies."

David Bywater, Chief Executive Officer of Vivint Solar, added, "Vivint Solar and Sunrun have long shared a common goal of bringing clean, affordable, resilient energy to homeowners. Joining forces with Sunrun will allow us to reach a broader set of customers and accelerate the pace of clean energy adoption and grid modernization. We believe this transaction will create value for our customers, our shareholders, and our partners."

Sunrun and Vivint Solar share a mission to create a planet run by the sun. Together, we can empower more families to take control of their energy future by increasing customer choice in how they create and consume power. There is an urgent need to decarbonize our energy system. Extreme weather due to climate change is increasing, putting immense strain on our energy system. Fossil fuel power plants are responsible for more than 30% of all carbon pollution across the country. Sunrun will be a meaningful contributor to a fully renewable and electrified energy system. Our growing fleet of solar homes and batteries will be networked to provide greater benefits to the grid and energy consumers. Generating energy at the point it is used reduces the need for dirty energy being produced far away that is increasingly expensive to transmit. Our customers have already and will continue to help shut down inefficient carbon-producing power plants.

Our combined customer base of nearly 500,000 creates a leading owner of solar assets globally, with over 3 gigawatts of solar assets on the balance sheet. Yet, residential solar has reached only 3% penetration in the United States today and the runway for growth remains massive.

Sunrun has committed to leading the solar industry in diversity and inclusion efforts, career development, and employee benefits. As part of a broader, more diversified company, we will be able to offer employees even more opportunities and solidify our position as the best place to work in the solar industry.

**Strategic Rationale**

This is a transformational opportunity to generate consumer and shareholder value, realize annual cost synergies and bring cleaner, affordable energy to more homes. It establishes Sunrun as a leading home solar and energy services company across the

United States, bringing greater opportunities for consumers to save money on their electric bills and decrease dependence on fossil fuels.

Residential solar has reached only 3% penetration in the United States today and yet surveys show nearly 9 out of 10 people in the United States favor expanding the use of solar power. The acquisition of Vivint Solar adds a complementary direct-to-home sales channel to Sunrun's platform, increasing our reach and capabilities in a growing market. Our thirteen years of experience has shown that a consultative experience from trusted sales advisors is important to educate customers of the merits of solar energy. Vivint Solar's highly trained, consultative field sales experts will be an important part of the combined platform and will serve as critical ambassadors for consumers to learn the benefits of solar energy.

Like Sunrun, Vivint Solar has adapted to the current environment, accelerating digital lead generation efforts and providing a contact-less selling and installation experience in most instances. This transition has resulted in improvements for both companies, including setting the foundation for structural cost reductions and improved customer experience.

We expect to deliver meaningful cost synergies, estimated at $90 million on an annual basis. We see opportunities across the entire cost base, including consolidating and optimizing our branch footprint, reducing redundant spending on technology systems, scaling our proprietary racking technology, as well as improving sourcing capabilities within our supply chains. There are also opportunities to realize scale benefits from shared corporate functions including accounting, human resources, legal, and policy. We expect additional revenue synergies to generate enhanced value creation for our customers and shareholders from a larger base of solar assets.

We expect to be able to offer batteries to the combined base of solar customers. A larger footprint of solar and battery assets also increases the value of what we bring to our grid services partnerships and strengthens our ability to deliver considerable value in that business. We expect to benefit from efficiencies in large scale project finance capital raising activities and are excited about the opportunity to build an even stronger and more recognizable consumer brand in residential energy services.

**Benefits for Customers**

Most energy consumers are currently beholden to a single power company that provides electricity to them based on their household location. As a benefit of this combination, Sunrun's increased scale, operating efficiency and combined research and development (R&D) efforts will enable the company to even further accelerate the adoption of renewable energy and give households more control over their energy future.

A lower cost structure from greater scale can open more markets and allow lower pricing for customers, accelerating the transition away from polluting fossil fuels. It will also give our customers access to better, more affordable products and services. Lastly, combining R&D resources and focusing efforts will allow us to accelerate the offering of advanced solutions, such as virtual power plants and other energy services programs, to more customers in more markets.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Transaction Details

Under the terms of the definitive transaction agreement, each share of Vivint Solar common stock issued and outstanding immediately prior to the effective time of the merger will be converted automatically into the right to receive 0.55 shares of Sunrun common stock.

The Board of Directors of Sunrun and Vivint Solar have each unanimously voted in favor of the definitive transaction agreement.

The acquisition of Vivint Solar is expected to be completed during the fourth quarter of 2020, subject to approval by Vivint Solar and Sunrun stockholders, regulatory approvals and other customary closing conditions. Sunrun's Board of Directors will be expanded by adding 2 directors, one of which is expected to be Vivint Solar's CEO, David Bywater.

Support Agreements have been obtained from both companies' largest stockholders, 313 Acquisition LLC (Blackstone affiliate) and Tiger Global, to vote their respective shares in favor of the merger and the share issuance, respectively.

In addition, 313 Acquisition LLC (Blackstone affiliate) has agreed to lock up 50% of shares obtained as a result of the acquisition for 60 days following closing and the remaining 50% for 120 days. Sales are allowed to occur during these periods subject to certain conditions..

**The Materially Misleading Registration Statement**

35.     Designed to convince stockholders to vote their shares in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the fairness of the Proposed Transaction, and the process leading up to the signing of the Merger Agreement.

36.     This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Sunrun stockholders.

***Material Omissions Concerning The Financial Projections***

37.     With respect to the Sunrun Management Projections, the Registration Statement fails to provide: (i) the value of certain line items used to calculate (a) Sunrun Total Volume (Megawatts), (b) Sunrun Total Megawatts, (c) Sunrun Total Costs, (d) Sunrun Net Cash Flow, (e) Vivint Solar Total Megawatts, (f) Vivint Solar Total Costs, (g) Vivint Solar Net Cash Flow, (h) Sunrun Projected Levered Cash Flow, (i) Total Sunrun Projected Cash Flow Scenario, (j) Vivint Solar Projected Levered Cash

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Flow Scenario, and (k) Total Vivint Solar Projected Levered Cash Flow Scenario, all of which are non-GAAP measures; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a); and (iii) stock-based compensation.

38.     With respect to the Sunrun Combined Company Forecasts, the Registration Statement fails to provide: (i) the value of certain line items used to calculate (a) Aggregate Proceeds and (b) Aggregate Costs, all of which are non-GAAP measures; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a); and (iii) stock-based compensation.

39.     As a result of the above-referenced misleading statements and omissions in the Registration Statement, Defendants violated Sections 14(a) and 20(a) of the Exchange Act.

40.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Accordingly, the omissions related to the financial projections are vital to Sunrun stockholders to evaluate both the merger and Sunrun's future as a standalone entity.

41.     Based on the foregoing disclosure deficiencies in the Recommendation Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Sunrun stockholders will suffer, absent judicial intervention, if Sunrun's stockholders are required to decide whether to tender their shares without the above-referenced material misstatements and omissions being remedied. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

45.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

46.     Here, Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the Company's financial projections; and (ii) the valuation analyses of the financial advisor.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to Sunrun common stockholders although they could have done so without extraordinary effort.

48.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of

the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement notes that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the financial advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.

49.     Further, the Individual Defendants were privy to and had knowledge of the projections for the Company, and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinion, question the advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement, and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     Sunrun is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

52.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and Sunrun stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Sunrun within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Sunrun and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  Thus, the Individual Defendants were directly involved in the creation of the Registration Statement.

57.     The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

a)   declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)  preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c)   to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d)  awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e)   granting Plaintiff such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: September 9, 2020

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosanne L. Mah*
Rosanne L. Mah
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
        etripodi@zlk.com

*Counsel for Plaintiff*

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934